UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA,

       v.                                          Case No.:  2:24-cr-171-KCD-NPM

FREDERICK TAYLOR,

_____/

## <u>ORDER</u>

Frederick Taylor pled guilty to a single drug charge, striking a deal with the Government to drop four other charges. (*See* Doc. 227.) But when the probation office circulated its initial presentence investigation report—which calculated an advisory guideline sentence of life imprisonment—Taylor had a change of heart. He now asks the Court to withdraw his guilty plea. He argues that his prior lawyer gave him bad advice about his sentencing exposure, rendering the plea illusory. Because the record of his comprehensive plea colloquy shows Taylor pled guilty knowingly and voluntarily, complete with explicit warnings from the magistrate judge that his ultimate sentence could differ from his lawyer's predictions, his request (Doc. 257, Doc. 263, Doc. 264.) is **DENIED**.

## I. Background

In February 2026, Taylor signed a written plea agreement with the Government. The deal was straightforward: he agreed to plead guilty to count four, which charged him with distributing methamphetamine. In exchange, the Government promised to dismiss the remaining counts, forgo additional related charges, and recommend both a reduction for acceptance of responsibility and a sentence at the low end of the applicable guidelines range. (*See* Doc. 227.)

But the agreement came with explicit caveats. It warned Taylor that he faced a statutory maximum of life in prison. It also detailed a dispute over his mandatory minimum sentence: the Government argued for 25 years based on two prior serious drug felonies, while Taylor claimed the convictions should merge for a 15-year minimum. (*Id.* at 3.) Either way, the agreement made clear that Taylor's maximum exposure was life, and he could not withdraw his plea if he disagreed with the Court's ultimate findings. (*Id.*) The document also specified that the Court was not bound by the Government's sentencing recommendations, and Taylor could not back out if the Court rejected those recommendations. (*Id.* at 12-13.)

A few weeks later, Taylor appeared before Magistrate Judge Timothy R. Rice to enter his guilty plea. (Doc. 259.) Judge Rice conducted a meticulous colloquy, walking Taylor through the constitutional rights he was giving up,

the factual basis of the charges, and the severe penalties he faced. Judge Rice specifically reminded Taylor that under any scenario, he was going to serve "at least 15 years to life and you might be required to serve 25 years to life." (*Id.* at 9.) Taylor affirmed that he understood.

Judge Rice then zeroed in on the sentencing guidelines—the exact issue that now forms the basis of Taylor's motion to withdraw. He explicitly warned Taylor that the Court would determine the guidelines and that the final sentence could be higher or lower than those guidelines provided. (*Id.* at 19.) Crucially, Judge Rice asked: "And you also understand that the sentence that Judge Dudek imposes could be different from any estimate that your lawyer may have given you or that you may have?" Taylor unequivocally answered, "Yes, sir." (*Id.*)

During the hearing, Taylor briefly hesitated, mentioning a protective order and that he felt he had "no choice but to plead guilty." (*Id.* at 10.) Judge Rice immediately stopped the proceeding, telling Taylor that was "not good enough" and emphasizing that a guilty plea must be a fully knowing and voluntary choice. (*Id.*) After the judge permitted Taylor to take a recess to confer privately with his attorney, Taylor returned to the record, confirmed he had seen everything he wanted, expressed full satisfaction with his lawyer's representation, and reiterated his desire to plead guilty. (*Id.* at 10-

3

12.) Finding the plea knowing, voluntary, and factually supported, the Court accepted it.

Despite those solemn declarations in open court, Taylor now wants a do-over. Shortly after receiving his initial presentence report, he moved to withdraw his guilty plea. He points to a discrepancy between the probation office's math and the advice he received from his lawyer. According to Taylor, counsel assured him that pleading guilty would yield a guideline range below life, completely failing to mention that the drug quantities from his dismissed charges would still count at sentencing. Because his lawyer miscalculated the sentencing exposure, Taylor concludes, his decision to plead guilty was unconstitutionally uninformed.

## II. Discussion

A guilty plea is a grave and solemn act. And for that reason, a defendant has no absolute right to take it back before sentencing. *See United States v. Buckles*, 843 F.2d 469, 471 (11th Cir. 1988). Instead, under Federal Rule of Criminal Procedure 11(d)(2)(B), a defendant can withdraw his guilty plea only if he shows a "fair and just reason" for doing so. *Id.*

The burden falls squarely on the defendant. *United States v. Izquierdo*, 448 F.3d 1269, 1276 (11th Cir. 2006). And to figure out whether he has cleared the bar, courts evaluate the totality of the circumstances, guided by four core factors: "(1) whether close assistance of counsel was available; (2)

whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." *Buckles*, 843 F.2d at 472.

When applying this test, we do not start with a blank slate. Statements made under oath during a plea colloquy carry a "strong presumption" of truth. *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). If a defendant later decides to contradict what he previously said, he bears a "heavy burden." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

Finally, timing matters. A swift change of heart might suggest the plea was genuinely entered in confusion. But a significant delay—especially when a defendant waits to see the presentence report—suggests the motion is merely a tactical maneuver to avoid a harsher-than-expected sentence. *United States v. Gonzalez-Mercado*, 808 F.2d 796, 801 (11th Cir. 1987). As the Eleventh Circuit has made clear, a miscalculated gamble on a potential sentence is not a valid ground for withdrawing a guilty plea. *Id.*

Taylor's argument crumbles under the weight of his own sworn statements. He claims the plea was involuntary because his attorney miscalculated the guidelines. But Taylor's entire theory rests on a premise the Eleventh Circuit has consistently rejected: that a lawyer's bad math invalidates a guilty plea.

5

A defense attorney's erroneous prediction about a sentencing guideline range is not a "fair and just reason" for withdrawing a plea, provided the trial court properly warned the defendant about his true exposure. *See United States v. Garcia*, 213 F. App'x 817, 820 (11th Cir. 2007). The Eleventh Circuit emphasized this exact point in *United States v. Wright*, holding that a defendant who unexpectedly faces a career-offender enhancement cannot retract his plea if the district court advised him of the statutory maximum and cautioned that counsel's estimates were not guarantees. 135 F. App'x 222, 224-26 (11th Cir. 2005).

That is precisely what happened here. During the plea colloquy, Judge Rice ensured that Taylor knew what he was signing up for. Taylor was warned that he faced a statutory maximum of life. He was warned that the ultimate guideline calculation was up to the Court. He was warned that the sentence could be higher or lower than the guidelines provided. And, crucially, Just Rice pointedly asked Taylor: "And you also understand that the sentence that Judge Dudek imposes could be different from any estimate that your lawyer may have given you or that you may have?" Taylor answered, "Yes, sir." Having been fully advised of the risks, Taylor cannot now claim he was blind to them.

Taylor's secondary argument—that his plea agreement was "illusory" because the dropped charges still factored into his relevant conduct and

resulted in a life guideline—fares no better. (Doc. 264 at 7.) A plea agreement is not illusory just because it proves less advantageous than hoped. In exchange for his plea to count four, the Government dismissed several other drug crimes and agreed not to bring further charges. Those are tangible benefits. The fact that the probation office calculated a higher-than-expected offense level does not retroactively erase the consideration Taylor received.

Because Taylor had the assistance of counsel and entered a knowing and voluntary plea, the Court need not dwell on the remaining factors. *See Wright*, 135 F. App'x at 225-26. But even if we did, they weigh heavily against him. Letting Taylor withdraw his plea would squander the judicial resources already expended and prejudice the Government, which would have to reassemble its case after having relied on Taylor's sworn admission of guilt.

In the end, Taylor's motion appears to be a case of buyer's remorse. He understood the charges, he understood the maximum penalties, and he understood the inherent uncertainty of his guidelines. He took a calculated risk. The Constitution requires that a plea be knowing and voluntary. It does not require that it be clairvoyant to the defendant. For these reasons, Taylor cannot withdraw his guilty. The court will reset the sentencing by separate notice.

**ORDERED** in Fort Myers, Florida on July 6, 2026.



Kyle C. Dudek
United States District Judge